BLANTON *v.* TRI-STATE TRANSIT CO. OF LOUISIANA, INC.

(Division A. March 22, 1943.)

[12 So. (2d) 429. No. 35300.]

**Stone & Stone,** of Coffeeville, for appellant.

**Wells, Wells, Lipscomb & Newman,** of Jackson, for appellee.

Argued orally by **Hubert Lipscomb,** for appellee.

**Roberds, J.,** delivered the opinion of the court.

The sole question involved in this appeal is whether this case should be remanded for assessment of damages by another jury. The verdict was for $200 in favor of Blanton, plaintiff below, who prosecutes this appeal and contends that the amount is so grossly inadequate as to require a new trial on the question of damages alone.

The damages consist of bodily injury, pain and suffering, resulting, as claimed by Blanton, from two distinct wrongs.

He was a passenger on a Tri-State bus from Calhoun City to Big Creek, Mississippi, a distance of some three or four miles; but at his request, and as an accommodation, Mr. Adams, the bus driver, stopped the bus to let him off at his home before reaching Big Creek. He says that when he there alighted from the bus the driver there-

of negligently closed the door of the bus, catching his left hand therein, causing him personal injury and pain. This is the first scene.

He further says that after alighting from the bus, as above stated, he re-entered the bus for the purpose of taking therefrom his ten-year-old granddaughter, Margaret, who had been detained on the bus by her mother and step-father, Mr. and Mrs. Peacock, and that while he was rightfully undertaking to get Margaret off the bus, he was wrongfully attacked by Mr. Adams, the driver, who struck him in the face with his fist several times, thereby inflicting bodily injury, pain and suffering. That is the second scene.

He also says that Peacock and Adams had entered into a conspiracy to get him off and keep Margaret on the bus, but there is no proof whatever to support this, and it disappears from the case. He sued Peacock and the transit company.

Describing in more detail the second scene—when Blanton re-entered the bus he was very angry—some of the witnesses say he had a wild look. Margaret was on the inside of the same seat with her mother. Blanton reached across Mrs. Peacock and caught Margaret by the arm and began to pull her violently. Margaret began to scream and there was much commotion. Adams left the driver's seat and came back to ascertain the trouble. Mrs. Peacock told him Margaret was her daughter. Adams several times asked Blanton to desist and leave the bus, both of which he refused to do. Adams then summoned to his aid Mr. Peacock and a Mr. Lovorn, another passenger. Blanton had his arms and legs so entwined about the back of and underneath the seat that it required the efforts of the three men to get him loose. Mrs. Peacock and Margaret went to the back of the bus, reserved for colored passengers, while Adams tried to persuade Blanton to get off, which he would not do. Blanton then followed and seized Margaret by the arm, pulling it be-

tween the divided backs of the seat, apparently with such force and in such position as to likely cause her injury. She was crying and appeared to be in considerable pain. Adams told Blanton that if he did not desist he would knock him loose from Margaret. He did not desist, and Adams struck him three times with his fist in and about the face, causing Blanton to break his hold on the child. Adams then succeeded in getting Blanton off the bus. In fact, Mr. and Mrs. Peacock and Margaret also got off. All of this consumed some fifteen to twenty minutes and caused much excitement among the other passengers. There were three other ladies on the bus—two with children. These two had gotten off and gone behind the bus; the other had moved forward to the driver's seat.

Blanton was the grandfather of Margaret, and it appears that he and his wife had largely reared her; that his wife had recently died, and he thought, and the fact might have been, that Mr. and Mrs. Peacock were trying to take Margaret away from him to their home at Merigold, Mississippi; but this relation of the child to Blanton was not known to Adams until this melee was about over.

The verdict of the jury reads: "We, the jury, find for the plaintiff, and fix the amount of damages at $200." Without detailing the nature and extent of the injuries as described in the testimony of Blanton and some of his witnesses, but accepting it as true, we would sustain a verdict for considerably more than $200 had the jury so found. However, under the foregoing situation we cannot know how the jury determined the facts and resolved the elements entering into the amount it did name. It might have decided that Blanton's hand was not caught in the door, which, in fact, would have been in accord with the great weight of the evidence on this point. The proof shows the greater injury was to the hand. It was the driver's duty, and the jury was so instructed, to protect the passengers on the bus, and he had the right to use such force as reasonably appeared necessary to

perform that duty. In addition to disbelieving the claim of hand injury it might have decided that Adams had used slightly too much force in disengaging Blanton from Margaret, and limited the damage to that resulting from the excess force. Under section 535, Code of 1930, in actions for assault and battery, defendant may show any extenuating circumstances in mitigration of damages. The jury could have concluded that the wrongful conduct of Blanton was such a mitigating circumstance as to largely reduce liability for the actual damages suffered by him. Aside from all of this, the record is not convincing that he suffered grave or permanent injury. There are conflicting facts—for instance, his display of strength, and the use of both his hands in such pugnacious and effective manner inside the bus immediately after he claims that his left hand had just been badly injured by being caught in the door.

Affirmed.