365 So.2d 1212 (1978)
James Elton COMER
v.
R. D. GREGORY, Administrator of the Estate of Sherman K. Chesnutt, Deceased.
No. 50312.
Supreme Court of Mississippi.
December 20, 1978.
Rehearing Denied January 24, 1979.
Parker, Averill, Funderburk & Butts, Roy O. Parker, Tupelo, for appellant.
Ed W. Jenkins, Booneville, for appellee.
Before ROBERTSON, P.J., and WALKER and BROOM, JJ.
ROBERTSON, Presiding Justice, for the Court:
James Elton Comer appeals from a judgment of the Circuit Court of Itawamba County, Mississippi, in his favor and against Sherman Chesnutt, for $125 damages based on a jury verdict for that amount rendered on a second trial of his suit for personal *1213 injuries against Sherman Chesnutt, now deceased.
This suit was based on an assault and battery committed upon Comer when he was shot in the lower right back by Sherman Chesnutt.
The jury returned a verdict in Comer's favor for $9,000 on the first trial. Comer moved for an additur or, in the alternative, for a new trial on the issue of damages only. The trial court granted an additur of $5,500, thus raising the verdict to $14,500. Defendant rejected the additur and a second trial on damages only was held on September 9 and 10, 1975. The jury on the second trial returned a verdict for $125 damages, and the trial court refused Comer's Motion for an additur or a new trial.
Comer has assigned as error:
(1) The verdict of the jury for $125 damages where plaintiff's actual damages were $9,433.58, was palpably against the weight of the evidence;
(2) The verdict of the jury for $125 damages evinces bias, passion and prejudice on the part of the jury; and
(3) Circumstances did not exist to mitigate plaintiff's damages, as provided in Mississippi Code Annotated section 11-7-61 (1972).
Chesnutt has assigned as error on his cross-appeal:
(1) The trial court committed reversible error by refusing to grant jury instruction No. D-19.
(2) The trial court committed reversible error by the exclusion of testimony offered on behalf of the defendant concerning the intoxication of the plaintiff and his companion.
Shortly after midnight on May 9, 1973, 25-year-old James Elton Comer and his companion, Ricky Griggs, went upon the posted property of Sherman Chesnutt to fish in his catfish pond. Chesnutt stocked his pond with channel catfish, regularly fed these fish, and charged a fee for fishing in it. He supplemented his income as a farmer with these fishing fees. He had been having trouble with people fishing in his pond without his permission, so on this particular night his pond was being guarded by Danny Chesnutt, his 28-year-old son. After observing Comer and Griggs fishing in the pond, Danny went to his father's home nearby and woke him up.
Sherman Chesnutt dressed and with his son walked down a public gravel road which bordered his property. Sherman stationed himself at a gate on a small dirt road leading to the catfish pond, and Danny walked down the public road in search of the fishermen's car.
After fishing for a short time, Comer and Griggs walked back up the dirt road to the gate. There they were confronted by Sherman Chesnutt. He pointed his 12-gauge shotgun at them and ordered them to raise their hands above their heads. When they raised their hands one of them dropped a rod and reel and also a bottle of rum, which was 2/3rds empty. Neither Comer nor Griggs would give his name nor would they tell Chesnutt where they were from. Chesnutt thought that they were drunk from the way they were acting. Chesnutt informed Comer and Griggs that he was taking them to the law. Griggs walked down one side of the road and Comer the other side. Sherman Chesnutt moved his flashlight from Griggs to Comer and testified that Comer at that time brought his hand down "and was going for the front of his coveralls", and that Comer appeared to be turning toward him. That is when Chesnutt shot Comer. He testified that he thought Comer was going for a gun and that he was fearful that Comer would shoot him.
Comer was transported to a hospital where he was operated on and was in the hospital in serious condition for several weeks. His doctor testified that he would not have any permanent injuries but that he would have a disfiguring scar from the operation.
After the shooting, Sherman Chesnutt immediately reported the incident to Constable Billy Gene Burns, who accompanied Chesnutt back to the scene of the shooting and there noted the bottle of rum 2/3rds *1214 empty. Sherman's testimony was corroborated by that of his son, Danny Chesnutt.
Comer's testimony was that his medical and hospital expenses amounted to $7,833.58, and that he had missed eight weeks from work as a pharmacist at a salary of $200 per week, so he contended that his total actual damages were $9,433.58.
Mississippi Code Annotated, section 11-7-61 (1972), provides:
"Mitigating circumstances. In actions for libel or slander, assault and battery, and false imprisonment, the defendant, under the plea of not guilty, may give in evidence any mitigating circumstances to reduce the damages, notwithstanding he may also have pleaded a justification." (Emphasis added).
Mitigating circumstances certainly would have been that these two young men were knowingly trespassing on the defendant's property in the middle of the night, willfully disregarding his posted signs; and that Sherman Chesnutt was at home asleep and was awakened by his son, Danny, who advised him of these trespassers. Sherman Chesnutt believed that Comer and Griggs were drunk and he saw a two-thirds empty rum bottle fall from their hands. These also were mitigating circumstances. However, the most important mitigating circumstance was that when Comer lowered his hand and went into his coveralls, and partially turned toward him, Sherman Chesnutt could reasonably have thought, as he testified he did think, that Comer was going for a gun and that that was the reason he shot him.
The jury was entitled to consider all of these mitigating circumstances and to reduce damages accordingly, even though no instruction was given on mitigating circumstances.
Mitigating circumstances are closely akin to contributory negligence, and Mississippi Code Annotated section 11-7-17 (1972), says:
"All questions of negligence and contributory negligence shall be for the jury to determine." (Emphasis added).
In Carr v. Cox, 255 So.2d 317 (Miss. 1971), involving an automobile accident, we said:
"This Court agrees that the damages are inadequate and no doubt would reverse but for the question of contributory negligence.
.....
"Although the jury was not given an instruction on contributory negligence, the jury was justified in reducing the plaintiff's damages in proportion to the amount of negligence attributable to her." 255 So.2d at 317-318.
In the later case of Altom v. Wood, 298 So.2d 700 (Miss. 1974), after citing Carr v. Cox, supra, this Court said:
"We are mindful that although contributory negligence is not pleaded and no instruction on comparative negligence is requested, the jury may reduce an award by taking into account plaintiff's contributory negligence." 298 So.2d at 702.
Mitigating or extenuating circumstances were involved in Blanton v. Tri-State Transit Company of Louisiana, Inc., 194 Miss. 393, 12 So.2d 429 (1943), which was an assault and battery case in which the jury returned a verdict of $200. In affirming this small verdict for Blanton, this Court said:
"Under Section 535, Code of 1930 [Section 11-7-61], in actions for assault and battery, defendant may show any extenuating circumstances in mitigation of damages. The jury could have concluded that the wrongful conduct of Blanton was such a mitigating circumstance as to largely reduce liability for the actual damages suffered by him." 194 Miss. at 398, 12 So.2d at 431.
The defendant would have been entitled to a properly worded instruction on mitigating circumstances, but the trial court was correct in refusing to grant instruction No. D-19. It was an abstract instruction and not tied in in any way to the mitigating circumstances in evidence in *1215 the case at bar. It furnished no guide whatsoever to the jury.
Because it is the duty and responsibility of the trial jury, as required by statute (11-7-17) to determine all questions of negligence and contributory negligence, and because by statute (11-7-61) the jury may consider any mitigating or extenuating circumstances in evidence in reducing damages, we are of the opinion that the judgment of the trial court, even though based on a small jury verdict, should be affirmed.
AFFIRMED ON DIRECT AND CROSS APPEALS.
PATTERSON, C.J., SMITH, P.J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.