875 P.2d 384 (1992)
117 N.M. 627
Joseph REICHERT, Personal Representative of the Estate of Alfredo Castillo, Deceased, Plaintiff-Appellee,
v.
Tony ATLER and Josie Atler, d/b/a the A-MI-GUSTO LOUNGE, Defendants-Appellants.
No. 11856.
Court of Appeals of New Mexico.
December 18, 1992.
Certiorari Granted February 11, 1993.
*385 Robert Dale Morrison, Law Offices of Robert Dale Morrison, Albuquerque, for defendants-appellants.
Louis Marjon, Clark Varnell, James C. Ellis, James C. Ellis, Attorney at Law, P.C., Albuquerque, for plaintiff-appellee.

OPINION
DONNELLY, Judge.
The previous opinion of the Court, filed on November 17, 1992, is withdrawn and the following is substituted.
Defendants, Tony and Josie Atler, doing business as the A-Mi-Gusto Lounge, appeal from a judgment entered by the district court following a bench trial, which awarded Plaintiff damages for the wrongful death of a patron. Defendants raise three issues on appeal: (1) whether the failure to join an indispensable party constitutes a jurisdictional defect requiring reversal; (2) whether there was substantial evidence indicating that Defendants had notice that the decedent was in danger; and (3) whether the amount of the award against Defendants should be reduced under the doctrine of comparative fault. Defendants have abandoned a fourth issue raised in their docketing statement. See State v. Fish, 102 N.M. 775, 701 P.2d 374 (Ct.App.1985) (issues listed in the docketing statement but not briefed are deemed abandoned). Affirmed in part and reversed in part.
On the evening of December 20, 1985, Alfredo Castillo (Castillo), Plaintiff's decedent, arrived at the A-Mi-Gusto Lounge (Lounge) in Bernalillo County. When Castillo entered the Lounge between 7:00 and 8:00 p.m., it was crowded with approximately 100 customers.
Shortly after arriving at the Lounge, Castillo became embroiled in an argument with another patron, Pablo Ochoa (Ochoa). Ochoa had been on the premises since mid-afternoon, drinking and playing pool. The altercation occurred in front of Deborah Espinosa (Espinosa), a Lounge employee and the daughter of Defendants. The argument was suspended when Castillo asked Espinosa to cash a check; however, it soon resumed. Espinosa made no attempt to intervene or summon the police. As the argument escalated, Ochoa produced a pistol and shot Castillo six times, causing his death. At the time of the shooting, Defendants had only one employee to provide security; however, the security guard was not present and was not scheduled to go on duty until 9:00 p.m. Another employee made a visual inspection of patrons as they entered the Lounge.
Plaintiff, as Personal Representative of the Estate of Alfredo Castillo, brought suit against Defendants for wrongful death. Following a trial on the merits, the district court adopted findings of fact and conclusions of law determining that Defendants, as owners of the Lounge, owed a duty to Castillo and their patrons to provide adequate security and staff to protect them from unreasonable and foreseeable risks of danger; that Defendants were aware of Ochoa's propensity for *386 violent behavior; and that Defendants and their employees failed to properly respond to the argument or to take appropriate security measures. Based upon its findings of negligence, the district court entered a judgment awarding damages against Defendants in the amount of $268,300, together with costs. Castillo was not found to have been contributorily negligent.
Subsequent to the entry of judgment, the district court also adopted alternative findings of fact and conclusions of law finding that Castillo's death was proximately caused by the concurrent fault of Defendants and Ochoa; and that the "Defendants, Tony Atler and Josie Atler [were] thirty-three and one third (33 1/3) per cent at fault and Pablo Ochoa [was] sixty-six and two thirds (66 2/3) per cent at fault in connection with the death of Alfredo Castillo." The alternative findings of fact and conclusions of law adopted by the district court, however, were not incorporated into its judgment.

I. INDISPENSABLE PARTY

Defendants deny that they were the owners of the Lounge at the time of the shooting and contend that the judgment must be set aside because of the failure to join Otlier's, Inc. (Otlier's) as an indispensable party. See SCRA 1986, 1-019(A) (Repl.1992). Specifically, Defendants contend that (1) Otlier's was the actual owner of the Lounge; (2) the district court implicitly found that Otlier's was an indispensable party when it entered its findings and conclusions on remand; (3) the district court erred by concluding that Defendants had waived their defense of the failure to join an indispensable party or that they were estopped from raising the defense on appeal; and (4) failure to join Otlier's as an indispensable party deprived the district court of jurisdiction.
We need not address all of Defendants' contentions. For the reasons discussed below, we hold that Defendants cannot prevail on their indispensable-party claim because they have not shown any prejudice to Otlier's resulting from the failure to join Otlier's as a party at trial.
While this appeal was pending, our Supreme Court overruled its prior decision of Holguin v. Elephant Butte Irrigation District, 91 N.M. 398, 575 P.2d 88 (1977), which characterized the failure to join an indispensable party as a jurisdictional defect. See C.E. Alexander & Sons, Inc. v. DEC Int'l, Inc., 112 N.M. 89, 811 P.2d 899 (1991). The Court in C.E. Alexander & Sons, Inc., taking notice of decisions construing Rule 1-019, held that under the provisions of the current rule, a failure to join an indispensable party is no longer considered jurisdictional and that the present rule requires the district court to balance the factors set forth in the rule to determine whether the action should continue in the absence of an indispensable party. Id.; see also R. 1-019(B). C.E. Alexander & Sons, Inc. also held that while a claim of failure to join an indispensable party under Rule 1-019 may be raised for the first time on appeal, an appellant making such a claim must show that the failure to join the indispensable party is prejudicial to the party not joined. Id.
We first inquire whether Defendants raised this claim prior to appeal, so as to trigger our review under an abuse-of-discretion standard, or whether they have raised this issue for the first time on appeal, in which event they would be required to show that Otlier's was prejudiced by its absence. See id. In their answers to Plaintiff's complaint, Defendants stated that Plaintiff failed to name an indispensable party, but did not identify the party. After the filing of the initial appeal in this case, we granted Defendants' motion to remand and directed the district court to permit an evidentiary hearing to consider the issue of whether Otlier's was an indispensable party and the related issues of waiver and estoppel. The district court found that Ochoa was the only indispensable party brought to the attention of the court prior to appeal, noting that Defendants' initial motions to dismiss asserted that Ochoa was the indispensable party referred to in Defendants' answers. These findings are supported by defense counsel's own statements, conceding that he did not raise a Rule 1-019 claim based on Otlier's absence prior to this appeal.
*387 Although the district court concluded that Defendants waived the Rule 1-019 claim and were estopped from raising it on appeal, we need not reach those issues. Under the analysis articulated in C.E. Alexander & Sons, Inc., because Defendants raised the nonjoinder of Otlier's for the first time following the entry of judgment, Defendants are required to show that the corporation's interests were prejudiced by its absence. The district court found that Otlier's was not prejudiced by its absence because 100% of the fault had been apportioned among other parties. We think this finding is dispositive of this issue. Nothing in Defendants' briefs or in the record herein indicates Otlier's was prejudiced by its failure to be joined as a party. We therefore affirm on this issue.

II. EVIDENCE OF NEGLIGENCE

Defendants contend that there is an absence of any admissible evidence indicating they had notice that Castillo was in any danger from Ochoa prior to the shooting. Although Defendants have focused on the admissibility of Espinosa's deposition, we also construe this portion of their brief as an attack upon the district court's conclusions that they were negligent. In reviewing this issue we do not consider Defendants' assertions that they did not own the Lounge and, thus, should not be held accountable for the failure to provide adequate security or the failure of their employee to intervene or summon assistance. Their requested conclusions of law recited that they were the owners of the Lounge. Moreover, Defendants' brief-in-chief fails to refer to all facts relevant to their arguments as to the insufficiency of the evidence.
Defendants, as owners of the Lounge, were under a duty to exercise reasonable care to protect Castillo from harm. In New Mexico,
"the proprietor of a place of business who holds it out to the public for entry for his business purposes, is subject to liability to guests who are upon the premises and who are injured by the harmful acts of third persons if, by the exercise of reasonable care, the proprietor could have discovered that such acts were being done or about to be done, and could have protected against the injury by controlling the conduct of the other patron."
Valdez v. Warner, 106 N.M. 305, 307, 742 P.2d 517, 519 (Ct.App.1987) (quoting Coca v. Arceo, 71 N.M. 186, 189, 376 P.2d 970, 973 (1962)); see also Restatement (Second) of Torts § 344 (1965).
The district court concluded (1) that Defendants breached their duty as owners of the Lounge by negligently failing to maintain adequate security, and (2) that Defendants were vicariously liable because of the negligence of their employee, Espinosa, who failed to properly respond to the escalating argument between Castillo and Ochoa. The court's decision will be upheld on appeal unless it appears that its findings and conclusions cannot be sustained either by the evidence or by permissible inferences from the evidence. See State ex rel. Goodmans Office Furnishings, Inc. v. Page & Wirtz Constr. Co., 102 N.M. 22, 690 P.2d 1016 (1984).
The district court adopted several findings determining that Defendants failed to maintain adequate security on the evening in question. The court found that the Lounge had a reputation as a dangerous bar and was "the scene of numerous murders, stabbings, shootings, assaults, and riots." The court also found that, despite the reputation for violence and large number of patrons who frequent the Lounge, no professional security was employed; that only one individual provided security; and that patrons were only given a visual inspection as they entered the Lounge. Defendants contend that the Lounge was not as dangerous a place as Plaintiff portrayed it; that most of the incidents cited by Plaintiff occurred several years prior to Castillo's death; and that Castillo would not have frequented the Lounge if it was so dangerous. Defendants have failed to cite to any portion of the transcripts in support of this challenge to the district court's findings, including the trial testimony of several law enforcement officers whose testimony supports the court's findings of negligence, and we decline to address this claim. See SCRA 1986, 12-213(A)(3) (Repl.1992); see also Beyale v. Arizona Pub. *388 Serv. Co., 105 N.M. 112, 729 P.2d 1366 (Ct. App.1986) (if a party fails to cite to relevant portions of the transcript, the court may decline to address the issue on appeal).
Defendants also challenge a second ground relied upon by the district court in holding that they were vicariously liable as owners of the Lounge based upon the acts and omissions of Espinosa. Because most of the evidence concerning the incident in question was introduced at trial through Espinosa's deposition, we first address Defendants' threshold contention that the district court erred in admitting the deposition. Under SCRA 1986, 1-032(A)(3)(e) (Repl.1992), the deposition of a witness may be used where "the party offering the deposition has been unable to procure the attendance of the witness by subpoena." The party seeking admission of deposition testimony in lieu of in-court testimony has the burden of showing that the witness is unavailable. See Arenivas v. Continental Oil Co., 102 N.M. 106, 692 P.2d 31 (Ct.App.1983).
Here, it appears that Plaintiff's counsel believed that Espinosa would be called as a defense witness at trial, since she was listed on Defendants' original witness list. After it became clear that Defendants had not subpoenaed her, the parties agreed that her deposition would be admitted if Plaintiff made a good-faith effort to find her. Thereafter, Plaintiff submitted an affidavit by his process server, who stated that she was unable to locate Espinosa despite good-faith attempts to do so. Based on this affidavit, and the fact that Espinosa was Defendants' daughter, the district court concluded that the requisite good-faith effort to locate the witness had been made. We agree. We find no abuse of discretion in the admission of Espinosa's deposition. See R. 1-032(A)(3)(e).
Among the findings adopted by the district court were findings that Espinosa observed Ochoa and Castillo arguing for approximately five minutes prior to the shooting; that Castillo had previously informed Espinosa that he had recently been in a fistfight with Ochoa; and that he feared Ochoa's violent nature. The record indicates Castillo also told Espinosa that he heard reports that Ochoa had previously killed someone, and that he knew Ochoa carried a gun. Based upon these findings, the district court found that Espinosa "took no steps after the initial argument [between Ochoa and Castillo] to obtain additional security, to call the Sheriff's Department, or to assure that no weapons were being carried by either. . . Ochoa or . . . Castillo."
Unless reasonable minds cannot differ, issues of negligence and causation are generally questions for the fact finder. See Trujillo v. Treat, 107 N.M. 58, 752 P.2d 250 (Ct.App. 1988). As reflected in Espinosa's deposition and other testimony, sufficient evidence was presented by Plaintiff supportive of the district court's findings that Espinosa had notice of the escalating argument between Ochoa and Castillo and negligently failed to take responsive measures. Although Espinosa's deposition stated that Ochoa and Castillo argued for only twenty-five seconds, this is contradicted by an earlier statement given by her to the police, wherein she indicated that the two men had argued for approximately five minutes. This conflict in the evidence was decided by the fact finder; we will not substitute our judgment for that of the district court in resolving conflicts in the evidence. See Sanchez v. Homestake Mining Co., 102 N.M. 473, 697 P.2d 156 (Ct.App. 1985).
As shown by the evidence summarized above, the record supports the district court's findings that Defendants were vicariously liable. Despite Espinosa's knowledge of prior disagreements between Ochoa and Castillo, she failed to intervene or call law enforcement officers to maintain security. This evidence supports the district court's conclusion that Espinosa failed to exercise reasonable care in protecting Castillo from danger. See Coca v. Arceo, 71 N.M. 186, 376 P.2d 970 (1962) (recognizing potential liability of innkeepers for attack by patron against another customer, where, by exercise of reasonable care, innkeepers could have discovered that harmful acts were about to occur and could have given protection by controlling conduct of other patron or calling police). Because Espinosa was Defendants' employee, the district court could properly conclude *389 from this fact that they should be vicariously liable for her negligence. See Kinetics, Inc. v. El Paso Prods. Co., 99 N.M. 22, 653 P.2d 522 (Ct.App.1982).

III. APPORTIONMENT OF FAULT

Defendants contend in their final issue that the district court erred in failing to compare their negligent acts and omissions with the intentional acts of Ochoa, so as to limit the damage award against them to their percentage of fault. Defendants argue that under the pure form of comparative negligence adopted by our Supreme Court in Scott v. Rizzo, 96 N.M. 682, 634 P.2d 1234 (1981), the fact finder should be required to compare the fault of an individual's intentional acts that cause damage to another, with the concurrent acts of other parties which negligently contribute to the injury in question.
We recently addressed a similar issue in Medina v. Graham's Cowboys, Inc., 113 N.M. 471, 827 P.2d 859 (Ct.App.1992). In Medina this Court upheld a judgment determining that the owner of a bar was jointly and severally liable for injuries sustained by a patron who was assaulted by a doorman employed by the owner. The Medina Court held that an employer who has negligently hired an employee may be jointly and severally liable for an intentional tort committed by the employee outside the scope of employment when the tort was a reasonably foreseeable result of the negligent hiring.
Although this Court in Medina held the proprietor jointly and severally liable for the damages sustained by the plaintiff, this Court recognized that in other situations, under comparative fault principles, a negligent tortfeasor's liability may appropriately be limited to its degree of fault, while holding an intentional tortfeasor liable for the full extent of the plaintiff's damages. Id. at 475-76, 827 P.2d at 863-64.
In judicially adopting the pure form of comparative negligence, our Supreme Court in Scott noted that the courts in California and Florida dispensed with arguments asserting that application of a comparative negligence rule would impose insurmountable difficulties upon fact finders with respect to the concept of "wilful and wanton misconduct." Scott v. Rizzo, 96 N.M. at 687, 634 P.2d at 1239. Scott also recognized the application of the doctrine of comparative fault in strict liability cases. Id. at 688, 634 P.2d at 1240. The basic premise underlying our Supreme Court's adoption of the doctrine of comparative negligence was to ameliorate the all-or-nothing doctrine of contributory negligence and replace it with a more equitable system in order to accomplish "(1) apportionment of fault between or among negligent parties whose negligence proximately causes any part of a loss or injury, and (2) apportionment of the total damages resulting from such loss or injury in proportion to the fault of each party." Id.
Following the adoption of the doctrine of comparative negligence in Scott, this Court, in Bartlett v. New Mexico Welding Supply, Inc., 98 N.M. 152, 646 P.2d 579 (Ct.App. 1982), held that in comparative negligence cases the doctrine of joint and several liability should no longer be applied and that individual concurrent tortfeasors should be legally responsible only for their respective percentage of fault. Id. at 159, 646 P.2d at 586. Plaintiff argues that the result reached in Bartlett is not applicable to the present case because, based either upon considerations of premises liability or public policy, Defendants should be held jointly and severally liable for damages arising from Castillo's death. We disagree.
At common law, the defense of contributory negligence was not available where the acts resulting in injury to a plaintiff were occasioned by the intentional misconduct of a defendant. See Li v. Yellow Cab Co., 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975) (in banc); see also Victor E. Schwartz, Comparative Negligence § 5.2 (2d ed. 1986); David C. Sobelsohn, Comparing Fault, 60 Ind.L.J. 413 (1985). In states which have replaced the doctrine of contributory negligence with comparative negligence, several courts have declined to apportion fault where the plaintiff was negligent and the defendant's acts injuring the plaintiff were occasioned by an intentional tort. See Bell v. Mickelsen, 710 F.2d 611 (10th Cir.1983); *390 Carman v. Heber, 43 Colo.App. 5, 601 P.2d 646 (1979); Mazzilli v. Doud, 485 So.2d 477 (Fla.Dist.Ct.App.1986); Florenzano v. Olson, 387 N.W.2d 168 (Minn.1986); McCrary v. Taylor, 579 S.W.2d 347 (Tex.Ct.App.1979); Cruz v. Montoya, 660 P.2d 723 (Utah 1983). But see Comer v. Gregory, 365 So.2d 1212 (Miss.1978); Comeau v. Lucas, 90 A.D.2d 674, 455 N.Y.S.2d 871 (Sup.Ct.1982). See generally Annotation, Application of Comparative Negligence in Action Based on Gross Negligence, Recklessness, or the Like, 10 A.L.R. 4th 946, 948-52 (1981).
Although a number of courts have declined to compare the negligent acts of a plaintiff with the intentional tortious conduct of one or more defendants, few jurisdictions have directly addressed the question of whether fault can be apportioned between two or more defendants, where the conduct of some was negligent and the conduct of others resulted from intentional misconduct. Courts which have considered this issue have reached different results. Compare Kansas State Bank & Trust Co. v. Specialized Transp. Servs., Inc., 249 Kan. 348, 819 P.2d 587 (1991) (declining to permit apportionment of fault between negligent defendant and third party found to have intentionally contributed to the plaintiff's injury) and Weidenfeller v. Star & Garter, 1 Cal.App. 4th 1, 2 Cal.Rptr.2d 14 (Ct.App.1991) (where the plaintiff was injured by concurrent negligence of one defendant and the intentional conduct of an assailant, statute held to limit negligent tortfeasor's liability to its percentage of fault); see also Blazovic v. Andrich, 124 N.J. 90, 590 A.2d 222 (1991) (construing state comparative fault statute to permit apportionment of fault between a contributorily negligent plaintiff, a negligent codefendant, and several settling codefendants whose fault was alleged to have been based upon intentional conduct).
In Kansas State Bank & Trust Co. the Kansas Supreme Court considered the question of whether fault should be apportioned between a negligent tortfeasor and an intentional tortfeasor under that state's comparative negligence statute. There, an action was brought on behalf of a mentally retarded six-year-old girl who had been sexually molested by a school bus driver. The court held that the bus driver's intentional conduct could not be compared with his employer's negligence in failing to protect the child from such intentional conduct, so as to reduce the employer's liability. The court rejected an approach suggested by the defendant whereby intentional tortfeasors would be held jointly and severally liable for the total amount of damages, but a negligent tortfeasor would be held liable only for that portion of the total damages representing his proportionate fault.
In contrast to the decision in Kansas State Bank & Trust Co., the California Court of Appeal reached a different result in Weidenfeller. In Weidenfeller the plaintiff was the victim of an assault in the parking lot of a bar. He brought suit against the owners of the bar, alleging that their failure to provide proper lighting and security contributed to his injuries. Following trial, the jury attributed seventy-five percent fault to the plaintiff's assailant, twenty percent to the bar, and five percent to the plaintiff. On appeal, the court rejected the plaintiff's arguments that comparative fault principles are inapplicable when one defendant is negligent and the acts of a third party are shown to have been intentional, and the acts and omissions of both parties contributed to the plaintiff's damages. In Weidenfeller the court determined that under that state's doctrine of comparative negligence and its statute limiting the joint and several liability of a negligent tortfeasor, liability of a negligent party should be limited to its percentage of fault. The court also held that "[t]o penalize the negligent tortfeasor in such circumstances not only frustrates the purpose of the statute but violates the common sense notion that a more culpable party should bear the financial burden caused by its intentional act." Weidenfeller v. Star & Garter, 2 Cal.Rptr.2d at 16.
Similarly, in Blazovic the New Jersey Supreme Court reviewed a case where the plaintiff sued the owner of a bar and restaurant, an employee of the bar and restaurant, and several patrons. The central issue posed on appeal involved the question of whether, under that state's comparative negligence act, the jury could properly apportion fault *391 between a plaintiff, a negligent codefendant, and several codefendants who entered into settlements with the plaintiff. The settling defendants were alleged to have intentionally injured the plaintiff. The court did not follow decisions of courts in other jurisdictions which refused to permit apportionment of fault in actions involving both negligent and intentional tortfeasors, noting that "[t]hose decisions derive from an earlier era when courts attempted to avoid the harsh effect of the contributory-negligence defense and sought to punish and deter intentional tortfeasors." Id., 590 A.2d at 231.
The Blazovic Court also held:
Neither [the difference between wanton and willful conduct] nor the divergence between intentional conduct and negligence precludes comparison by a jury. The different levels of culpability inherent in each type of conduct will merely be reflected in the jury's apportionment of fault. By viewing the various types of tortious conduct in that way, we adhere most closely to the guiding principle of comparative faultto distribute the loss in proportion to the respective faults of the parties causing that loss.
Id.
We believe the rationale applied by the courts in Weidenfeller and Blazovic is consistent with the reasoning of our Supreme Court in Scott, prompting recognition of the doctrine of comparative fault in New Mexico. Similarly, these decisions follow the path marked by this Court's decision in Medina. Although in Medina we reached a result similar to that in Kansas State Bank & Trust Co., the basis for our decision rested upon narrower grounds. Medina depended on the special nature of the employer-employee relationship and held that the employer's liability for the employee's share of fault was only a limited and natural extension of the liability without fault imposed upon employers by the doctrine of respondeat superior.
In the present case, Defendants were negligent in failing to provide adequate security, and were also found to be vicariously liable through the negligence of their employee, Espinosa, in failing to properly respond to the escalating argument between Castillo and Ochoa. Here, however, there was no special relationship between Defendants and the intentional tortfeasor, Ochoa, requiring the imposition of vicarious liability for Ochoa's intentional killing of Castillo. Under such circumstances, the factors present in Medina do not exist, and we conclude that the liability of Defendants should be limited to their percentage of fault and that Defendants should not be held jointly and severally liable for the entire harm visited upon Castillo.
Following our Supreme Court's decision in Scott and this Court's decision in Bartlett, our legislature enacted legislation continuing the doctrine of joint and several liability in certain situations.[1] NMSA 1978, § 41-3A-1 (Repl.Pamp.1989); see also Saiz v. Belen Sch. Dist., 113 N.M. 387, 827 P.2d 102 (1992) (applying public-policy exception under statute to permit joint and several liability for negligence involving nondelegable duty of employer of independent contractor). Since the statute was enacted subsequent to the time this action was filed, it has no application to the present proceeding.
Plaintiff postulates a number of reasons as to why Defendants should be held subject to joint and several liability in the present case. He reasons, inter alia, that unless Defendants are held subject to joint and several liability for negligently failing to protect patrons from intentional acts of other patrons or third parties, innkeepers or dramshop owners will no longer have a monetary compulsion to protect patrons, and that applying comparative fault under the circumstances *392 existing here will nullify a proprietor's duty of care. Plaintiff additionally argues that this Court, on public policy grounds, should refuse to permit Defendants to apportion their liability with that of Ochoa, an intentional tortfeasor. Plaintiff asserts that where Defendants have a duty to protect a plaintiff from the hands of a third person, Defendants should not be permitted to reduce their liability by showing that the act of an intentional tortfeasor also contributed to the injuries sustained by a customer. Instead, he urges that Defendants should be held jointly and severally liable for the full amount of any damages visited upon Castillo. Cf. Slager v. HWA Corp., 435 N.W.2d 349 (Iowa 1989) (declining to apply statute abolishing joint and several liability to restrict bar owner's liability where customer was injured by an intoxicated tortfeasor who had been drinking at defendant's bar). We reject these arguments.
Under the circumstances here, we think Plaintiff's contentions run counter to the basic principle of fairness underlying our pure form of comparative negligence. See Scott v. Rizzo, 96 N.M. at 688, 634 P.2d at 1240 (recognizing that liability should be apportioned upon the percentage of fault of each tortfeasor); Medina v. Graham's Cowboys, Inc. (same). Nor does the result reached here destroy the deterrent effect of tort liability or remove any financial incentive to protect patrons or third parties. Moreover, under the doctrine of comparative fault, not only is each tortfeasor held accountable in damages for the full amount of his or her apportioned fault, but where the acts or omissions of an individual tortfeasor are found to be willful, wanton, malicious, reckless, or grossly negligent, he or she may also be subject to an award of punitive damages. See SCRA 1986, 13-1827 (Repl.1991); Ruiz v. Southern Pac. Transp. Co., 97 N.M. 194, 201, 638 P.2d 406, 413 (Ct.App.1981); see also Tampa Elec. Co. v. Stone & Webster Eng'r Corp., 367 F.Supp. 27, 38 (M.D.Fla. 1973) (comparative negligence does not diminish award of exemplary damages); Comeau v. Lucas, 455 N.Y.S.2d at 872 (punitive damages held not subject to apportionment). Neither the decision of our Supreme Court in Scott nor the subsequent legislation (§ 41-3A-1) providing for several liability in actions involving the doctrine of comparative fault, or the exceptions set out in the statute, have signaled a lessening of any duty imposed upon innkeepers or dramshop owners.
Plaintiff also argues that because Defendants are under a duty to protect their patrons, public policy requires that Defendants should be held jointly and severally liable, and that application of comparative negligence in the present case is improper because a special relationship existed between Defendants and Castillo, e.g., dramshop owner and patron, or that of licensor-licensee, imposing a greater duty of care upon Defendants to protect Castillo and other customers. Plaintiff additionally argues that unless joint and several liability is held to exist here, the holdings in Schear v. Board of County Commissioners, 101 N.M. 671, 687 P.2d 728 (1984); Lopez v. Maez, 98 N.M. 625, 651 P.2d 1269 (1982); and Methola v. County of Eddy, 95 N.M. 329, 622 P.2d 234 (1980), involving the defendants' duty of care, would be undermined. We find these arguments unpersuasive.
Although we agree with Plaintiff that Defendants were under a duty to exercise reasonable care to protect Castillo and others from harm by other patrons, considering the basic objectives of Scott to apportion liability based on the degree of fault of the parties causing the loss, we do not believe this duty gives rise to the creation of a public-policy exception or a special relationship subjecting Defendants to joint and several liability for Castillo's death. The special relationship noted in Medina was a relationshipthe employer-employee relationshipwhich the common law has long found to be an appropriate basis for imposing liability without fault. To impose liability on a negligent tortfeasor beyond the percentage of that tortfeasor's comparative fault is to impose liability without fault. Plaintiff has not pointed to any common law tradition of imposing upon tavernkeepers liability without fault for injuries to patrons caused by the intentional misconduct of other patrons. In the absence of a special relationship upon which the common law has predicated liability without fault, Medina provides no basis for making Defendants jointly and severally liable in this case. Nor do we agree that application of the doctrine of comparative *393 fault under the circumstances shown here is inherently unfair or is inconsistent with the results reached in Schear, Lopez, and Methola. Unfairness would result by treating equally one in Defendants' position who is very negligent and one who is minimally negligent. Under the rule of comparative fault, Defendants are held accountable in damages for the full amount of their culpability. Additionally, as discussed above, Defendants may also be held accountable for punitive damages in appropriate cases where the facts and pleadings of Plaintiff support such claim.

IV. CONCLUSION

For the reasons stated above, we affirm the district court except as to its ruling holding Defendants jointly and severally liable for the full amount of the judgment. The cause is remanded to the district court with instructions to enter a new judgment consistent with the court's alternative findings of fact and conclusions of law. The parties shall bear their own costs.
IT IS SO ORDERED.
MINZNER and HARTZ, JJ., concur.
NOTES
[1] After the filing of the complaint in this case, Section 41-3A-1(C) became effective on July 1, 1987. The statute replaced the doctrine of joint and several liability with the doctrine of comparative fault, except as

(1) to any person or persons who acted with the intention of inflicting injury or damage;
(2) to any persons whose relationship to each other would make one person vicariously liable for the acts of the other, but only to that portion of the total liability attributed to those persons;
(3) to any persons strictly liable for the manufacture and sale of a defective product, but only to that portion of the total liability attributed to those persons; or
(4) to situations not covered by any of the foregoing and having a sound basis in public policy.