# VIRGINIA L. GIBBONS, Appellant,

## v.

# AMERICAN SAMOA GOVERNMENT, Appellee.

High Court of American Samoa
Appellate Division

AP. No. 13-01

October 3, 2002

## OPINION AND ORDER

Before RICHMOND, Associate Justice, WALLACE,[*] Acting Associate Justice, MOLLWAY,[**] Acting Associate Justice, MAMEA, Associate Judge, SAGAPOLUTELE, Associate Judge.

Counsel: William H. Reardon, Esq., for Appellant Virginia Gibbons.
 Fiti A. Sunia, Esq., for Appellee American Samoa Government.

### Introduction

Appellant Virginia L. Gibbons ("Gibbons") came to American Samoa from the United States in 1989 on a contract to serve as an environmental attorney with American Samoa's Attorney General. On February 16, 1992 she was attacked and sexually assaulted by Maosi Fuala`au, a prisoner who had escaped from the American Samoa Correctional Facility. Fuala`au had been previously convicted of sexual assault in the very housing complex in which Gibbons lived. Bringing no claim against Fuala`au, Gibbons sued the American Samoa Government ("ASO") claiming that ASG had negligently allowed Fualaau to escape and that ASG's negligence caused her injuries. Gibbons won at trial but appeals the damage award issued by the High Court of American Samoa, Trial Division (the "trial court"). We affirm.

Gibbons identifies two errors in the damage award. First, she says the trial court erred in apportioning only a percentage of fault to ASG and in reducing her damage award against ASG accordingly. We disagree. The doctrine of joint and several liability has developed in the trial courts in this jurisdiction. Under the circumstances of this case, the trial court correctly abrogated that common law in a manner consistent with existing Samoan law.

---

[*] The Honorable J. Clifford Wallace, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation of the Secretary of the Interior.
[**] The Honorable Susan Oki Mollway, District Judge, United States District Court for the District of Hawaii, sitting by designation of the Secretary of the Interior.

The second error Gibbons assigns concerns the trial court's reduction of her lost wage damages to account for taxes. We hold that the trial court properly took taxes into account in determining what Gibbons would actually have earned had she not been assaulted.

## Analysis

A. The Trial Court Properly Apportioned the Damages Assessed Against ASG

■ The trial court found ASG one-third at fault and held ASG liable for only one-third of Gibbons' total damages. This is the first time that an appeal to this court has squarely raised the issue of whether courts may apportion damages between or among joint tortfeasor defendants.[1] In the absence of any appellate pronouncement on the subject, our trial courts have expressed their belief that, in their search for fairness, they may indeed apportion damages. *See, e.g., Masania`i v. Tendrick*, CA 121-95, slip op. (Trial Div. Jan. 9, 1995); *Fiaui v. Faumuina*, 27 A.S.R.2d 36 (Trial Div. 1994) (declining to aportion damages in that instance but noting that the court could apportion in appropriate circumstances). Whether the trial court in this case had the power to apportion damages turns on whether apportionment may be imposed by a court or whether it may only be imposed by statute. This court reviews questions of law *de novo*. *Anderson v. Vaivao*, 21 A.S.R. 95, 98 (App. Div. 1992). We hold that the trial court had the power to order apportionment.[2]

---

[1] In *Saufo`i v. American Samoa Government*, 19 A.S.R.2d 54 (App. Div. 1991), this court had before it an appeal from a damage award in which the proportional fault of each defendant had been determined, with damages correspondingly apportioned among the defendants. However, the propriety of apportionment among the defendants was not an issue on appeal. *See id.* at 56 (identifying as issues on appeal only whether claims against the government in its proprietary capacity should have been dismissed and whether the plaintiffs should have been found comparatively negligent). After addressing the issues raised by the appeal, this court affirmed the damage award, including the apportionment, without examining the issue of whether apportionment was appropriate. Thus, Saufo`i cannot be said to constitute appellate approval of apportionment.

[2] Gibbons' appeal presents the purely legal question of whether a court may order apportionment. Gibbons does not challenge the actual percentage assigned to ASG by way of apportionment. To have challenged whether the record supported that percentage by a reasonable certainty, Gibbons would have had to provide a record of the evidence showing that there was no such reasonable certainty. Gibbons provides

The rule widely recognized in American common law was that damages would not be apportioned between or among joint tortfeasors. *See, e.g., Roche v. Egan,* 433 A.2d 757, 760 (Me. 1981) ("Maine adheres to the widely recognized common law rule that a jury may not apportion damages for a single injury caused by joint, or concurrent, tortfeasors"); *Hogan v. City-County Hosp. of LaGrange,* 221 S.E.2d 796, 801 (Ga. Ct. App. 1976) ("In Georgia we follow the common law rule that there is no percentage of fault (i.e. no division of liability nor apportionment of damages among joint tortfeasors)"); Mary J. Cavins, Annotation, *Propriety & Effect of Jury's Apportionment of Damages as Between Tortfeasors Jointly & Severally Liable,* 46 A.L.R.3d 801, 806 (1972) ("The common-law rule . . . was that a jury had no right to apportion damages as between defendant joint tortfeasors").

Joint tortfeasors were held jointly liable for all of a plaintiff's damages because it was thought that plaintiffs should not be denied the possibility of collecting the full amount of their judgments when one of the defendants was unable to pay its share of the judgment. 74 AM JUR. 2D *Torts* § 69 (2001); Cavins, *supra,* 46 A.L.R.3d at 806.

▪ American Samoa's trial courts have applied the common law of joint and several liability. *See, e.g., Fiaui,* 27 A.S.R.2d at 40-42 (applying joint and several liability when concurrent intentional torts caused damage to a vehicle); *Euta v. Etimani,* 24 A.S.R.2d 139, 144 (Trial Div. 1993) (holding defendants jointly and severally liable for personal injury damages and noting that American Samoa's comparative negligence statute did not alter the common law of joint and several liability). No appellate decision expressly adopts or rejects this common law, and no statute in this jurisdiction codifies it. This court holds that this judicially created doctrine is subject to judicial modification, provided the modification is consistent with American Samoan law. The trial court's modification in this case was entirely consistent with American Samoan law.

Abolition of joint and several liability and adoption of a more equitable scheme is in keeping with the adoption of comparative negligence. *See, e.g., Laubach v. Morgan,* 588 P.2d. 1071, 1075 (Okla. 1978) ("Holding a defendant tortfeasor, who is only 20 percent at fault, liable for [the] entire amount of damages is obviously inconsistent with the equitable principles of comparative negligence"), *superseded by statute as stated in Smith v. Jenkins,* 873 P.2d 1044, 1047 n.15 (Okla. 1994). American Samoa has implemented comparative negligence by statute. *See* A.S.C.A. § 43.5101 (contributory negligence by a claimant does not bar recovery, but "damages shall be diminished by the court in proportion to the amount of negligence attributable" to the claimant). That does not mean that apportionment among defendants may only be accomplished in

this jurisdiction by statute.

We recognize that, in other jurisdictions, joint and several liability has usually been abolished by statute. Statutory modifications of the common law of joint liability have taken many forms. *See, e.g.,* STEIN ON PERSONAL INJURY DAMAGES § 14:25 (Gerald W. Boston, ed., West Group, 3d ed. 1997) (listing various statutory modifications to joint and several liability). It is perhaps the wealth of different apportionment schemes that has led some to conclude that apportionment is an issue best left to the give and take of the legislative process, not to judicial decision. *See Battle v. Morris,* 93 So.2d 428, 432 (Ala. 1957) ("In the absence of a statute providing otherwise, damages against jointtortfeasors [sic] are not apportioned. Joint tortfeasors are jointly and severally liable for the entire damage sustained"); *Grober v. Capital Transit Co.,* 119 F. Supp. 100, 107 (D.D.C. 1954) ("The rule is well settled that in the absence of a statute authorizing a jury to sever or apportion damages against joint tortfeasors, an assessment of damages against those sued jointly for a wrong must be for one sum against all those found liable, and a verdict which attempts to apportion the liability among the several defendants by directing the amount each shall pay is irregular"); 74 AM. JUR. 2D *Torts* § 69 (2001) ("In the absence of statutory authorization, no apportionment of compensatory damages may be incorporated in the judgment establishing the liability of joint tortfeasors"); Cavins, *supra,* 46 A.L.R.3d at 808 ("The traditional and overwhelming weight of authority is to the effect that joint tortfeasors . . . may not, in the absence of statute having a different effect, have apportioned among them the compensatory damages").

The view that it is the legislature that must adopt apportionment, however, is by no means universal. American Samoa's trial courts are not alone in developing the law of apportionment through court rulings. In Oklahoma, for example, it was the Oklahoma Supreme Court that abolished joint liability among defendants, concluding that it was "inconsistent with the equitable principles of comparative negligence." *Laubach,* 588 P.2d at 1075. The court stated that, in so doing, it was augmenting Oklahoma's comparative negligence statutes, furthering their intent and the underlying principle of equity. *Id.* at 1074. The court reasoned that doing away with joint liability allowed a plaintiff to "collect his damages from the defendant who is responsible for them," not a defendant who is only partially responsible for them. *Id.* From the various models available to it, the Oklahoma court chose a system under which each defendant was liable for only the percentage of the award attributable to him or her.

Similarly, in *Reichert v. Atler,* 875 P.2d 379 (N.M. 1994), a case with many similarities to the present one, New Mexico's Supreme Court

Similarly, in *Reichert v. Atler*, 875 P.2d 379 (N.M. 1994), a case with many similarities to the present one, New Mexico's Supreme Court approved the judicial imposition of apportionment between defendant tortfeasors.[3] *Id.* at 382. *Reichert* involved a negligent tortfeasor seeking to avoid having to pay damages caused by an intentional tortfeasor. *Id.* at 380. Similarly, here, ASG argues that, as a negligent tortfeasor, it should not be liable for all of the damages that Gibbons suffered through Fuala'au's intentional acts. The New Mexico court held that apportionment was not limited to situations involving only negligent tortfeasors. *Id.* at 382. The court also permitted apportionment when damages were caused by both a negligent tortfeasor and an intentional tortfeasor. *Id.* The court found no reason to expose a negligent tortfeasor to a greater damage award when a joint tortfeasor acted intentionally than the negligent tortfeasor would have been exposed to had the joint tortfeasor acted only negligently. *See id.*

More than a decade before it judicially abrogated joint and several liability among defendants who were tortfeasors, New Mexico had judicially adopted the doctrine of comparative negligence with respect to negligent plaintiffs. In *Scott v. Rizzo*, 634 P.2d 1234 (N.M. 1981), the Supreme Court of New Mexico had before it the question of whether New Mexico "should judicially declare that the existence of contributory negligence be no longer a complete bar against a plaintiff's recovery, but that it be replaced by a system of comparative negligence which would assess damage liability directly proportionate with fault." *Id.* at 1236. The court examined the argument that comparative negligence could only be adopted by the legislature. *See id.* at 1238-39. Rejecting what it called this "separation-of-powers" argument, the court noted that contributory negligence had "originated with a judicial decision" and therefore could be changed by a subsequent judicial decision.[4]

That was precisely the conclusion that courts in Tennessee and California reached in judicially abolishing the concept that a plaintiff's contributory negligence barred that plaintiff from any recovery. The reasoning of those decisions applies to the present judicial amendment of the common

[3] After the complaint was filed in *Reichert*, New Mexico adopted a statute limiting the doctrine of joint and several liability. *See* N.M. Stat. Ann. § 41-3A-1 (1989). Because the statute was passed after the lawsuit was filed, it was inapplicable to the action. *See Reichert v. Atler*, 875 P.2d 384, 391 (N.M. Ct. App. 1992), *aff'd*, 875 P.2d 375 (N.M. 1994).

[4] The holding in *Rizzo* was subsequently limited by the New Mexico legislature. *See Reichert v. Atler*, 875 P.2d 384, 391 (N.M. App. 1992) ("Following our Supreme Court's decision in *Scott* . . . , our legislature enacted legislation continuing the doctrine of joint and several liability in certain situations"), *aff'd*, 875 P.2d 379 (N.M. 1994).

law.

In *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992), the Supreme Court of Tennessee concluded that it was "time to abandon the outmoded and unjust common law doctrine of contributory negligence and adopt in its place a system of comparative fault."[5] *Id.* at 56. The court implemented a. "49 percent rule" holding that, "so long as a plaintiff's negligence remains less than the defendant's negligence[,] the plaintiff may recover." *Id.* at 57. The court recognized that the Tennessee legislature could have abolished the inequitable common law doctrine of contributory negligence. *Id.* at 56. However, because the doctrine of contributory negligence was "conceived in the judicial womb," the court reasoned that the judiciary could abrogate the doctrine. *Id.* The court noted that 'legislative inaction has never prevented judicial abolition of obsolete common law doctrines." *Id.* Having addressed a plaintiff's comparative negligence, *McIntyre* went on in dicta to examine comparative liability among defendant tortfeasors. The court reasoned that comparative liability among defendants would promote fairness and complained that joint and several liability could "fortuitously impose a degree of liability that is out of all proportion with fault." *Id.* at 58.

California's Supreme Court reached the same conclusions in *Li. v. Yellow Cab Company of California*, 532 P.2d 1226 (Cal. 1975). Rejecting charges of judicial activism and violation of "separation of powers," the court declined to abstain on the issue of a plaintiff's comparative negligence, recognized the practical difficulties and complexities facing a court creating a comparative negligence scheme, and imposed the rule that a plaintiff's recovery would be reduced in proportion to the plaintiff's negligence. *See generally id.* The court opined that the California legislature had left for "further judicial development" the issue of how to treat a plaintiff's negligence. *Id.* at 1233.

■ We hold that, in this jurisdiction, apportionment is a proper subject for judicial development. The trial court's apportionment decision in this case is consistent with the law of American Samoa. This jurisdiction has no statute requiring joint and several liability in all cases. The trial court's method of apportionment mirrors the statutory method for determining the effect of a plaintiff's negligence. *See* A.S.C.A. § 43.5101 (1992). The legislature, having had ample opportunity to react to trial court decisions from several years ago apportioning damages among defendant tortfeasors, has seen fit to do nothing, thereby allowing

---

[5] This system varied from Tennessee's common law of contributory negligence which barred a plaintiff's recovery when the plaintiff had any fault in bringing about his or her damages. *See McIntyre*, 833 S.W.2d at 54.

interest in taking the matter away from the judicial arena. Under these circumstances, the trial court in this case correctly imposed apportionment.

At least one trial court decision suggests that intentional tortfeasors like Fuala'au may not benefit from apportionment. *See, e.g., Fiaui*, 27 A.S.R.2d at 40-42 (holding that, even if damages could have been ascertained with reasonable certainty, apportionment would not have been appropriate because "joint and several liability remains the rule for intentional torts"). It may be that there are other situations in which apportionment will be found inappropriate. We need not flesh out the law of apportionment here to address such situations. We do not declare that all judicial permutations of the common law are permissible. We say only that the apportionment ordered by the trial court here was well within what is allowed by the law of American Samoa.

■ Gibbons also claims error in the trial court's decision to consider apportionment during the damages portion of her trial, rather than during the liability phase. A trial court's bifurcation decision is reviewed for abuse of discretion. *Hilao v. Estate of Marcos*, 103 F.3d 767, 782 (9th Cir. 1996). We conclude that the trial court did not abuse its discretion in choosing to consider apportionment during the damages phase of the trial.

■ Gibbons cites to *United States v. Alcan Aluminum Corporation*, 964 F.2d 22 (3d Cir. 1992), for the proposition that the issue of joint and several liability should be resolved during the initial liability phase of the trial. However, *Alcan* only suggests in dicta that apportionment of fault "is best resolved at the initial liability phase and not at the [damages] phase since it involves precisely relative degrees of *liability*." *Id.* at 270 n.29. While we appreciate the Third Circuit's logic, we conclude that the better view is that bifurcation can be at any point that "will minimize the overlap in evidence between the segmented phases or otherwise promote economy and accuracy in adjudication." *Hydrite Chem. Co. v. Calumet Lubricants Co.*, 47 F.3d 887, 891 (7th Cir. 1995). Furthermore, Gibbons has cited no evidence in the record that the trial court's decision was so contrary to these concerns of judicial economy and efficiency that it raised to the level of an abuse of discretion. Accordingly, we reject her claim on this issue.

B. The Trial Court Properly Taxed Gibbons' Damages

Gibbons argues that the trial court erred by deducting taxes from her award of lost past and future wages. She contends that these wages arose from a tort-type physical injury award, and therefore are excludable from her taxable gross income. We agree that ASG may not tax Gibbons'

from a tort-type physical injury award, and therefore are excludable from her taxable gross income. We agree that ASG may not tax Gibbons' award for lost wages. The post-judgment taxability of an award, however, is a matter distinct from the proper calculation of that award in the first instance. We hold that the court properly reduced the award for lost wages so that Gibbons would be accurately compensated for her losses.

American Samoa's tax laws incorporate by reference the United States Internal Revenue Code, Title 26 of the United States Code. A.S.C.A. § 11.0403(a) (2000) ("The income tax and the income tax rules, in force in the United States of America and those which may hereafter be enacted or adopted, where not clearly inapplicable or incompatible with the intent of this section, are adopted by American Samoa, and shall be deemed to impose a separate territorial income tax, payable to the government").

■ The trial court correctly considered income taxes when determining Gibbons' past and future income damages. Damages for personal injuries are imposed to compensate victims for the losses, expenses, and suffering caused by their injuries. *See, e.g.,* 2 Dan B. Dobbs, *Dobbs Law of Remedies* § 8.1(1) (2d ed. 1993). A person's income tax is certainly a "relevant factor" in determining his or her actual monetary loss. *See Norfolk & W. Ry. Co. v. Liepelt,* 444 U.S. 490, 493-94 (1980). When a court fails to reduce a victim's damage award for lost wages by taxes that he or she would have paid, the victim is overcompensated. Accordingly, we follow those jurisdictions in which the fairer rule of deducting taxes from lost wage awards when practicable is applied. *See, e.g., Furumizo v. United States,* 245 F. Supp. 981, 1014 (D. Haw. 1965), *aff'd,* 381 F.2d 965 (9th Cir. 1967). This rule compensates the victim for damages actually suffered.

Had Gibbons not been raped, she would have continued in her employment and her earnings would have been taxed. Had the trial court not deducted for taxes, Gibbons would never have been taxed on her wages, as the award would not have been included in her "gross income." In the version of 26 U.S.C. § 104(a)(2) applicable to this case, taxable gross income does not include "the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness." 26 U.S.C. § 104(a)(2) (1999).[6]

---

[6] In pertinent part, the prior version of § 104(a)(2) was amended in 1996 to limit damage exclusions to those awarded for "personal physical injuries or physical sickness." 26 U.S.C. § 104, Historical & Statutory Notes for 1996 Amendments (noting that "physical" was added before the words "injuries" and "sickness").

■ The Supreme Court in *Commissioner v. Schleier*, 515 U.S. 323, 337 (1995), emphasized two guidelines for exclusion under § 104(a)(2). The Court held that an award or settlement could be exempt from taxation under § 104(a)(2) only if: (1) the claim was based on "tort or tort type rights" and (2) the damages were received on account of "personal [physical] injuries or [physical] sickness." *Id.* (incorporating the 1996 amendments to 104(a)(2)). That case involved a claim that an employee had been fired in violation of the Age Discrimination in Employment Act of 1961. At issue was the question of whether a "backpay" settlement for age discrimination was entirely "independent of the existence or extent of any personal injury." The Court held that the "backpay" settlement was attributable to the discrimination, was not on account of personal injury or sickness, and was therefore taxable. *Id.* at 330-31. In discussing that issue, the court, in dicta, stated that, if a plaintiff were injured in an automobile accident, any settlement compensating that plaintiff for those injuries would not be taxed under § 104(a)(2). Not even the payment for wages lost as a result of the accident would be included in "gross income," as they would be on account of personal injuries. *Id.* at 329-30:[7]

---

Pursuant to *Landgraf v. USI Film Productions*, 511 U.S. 244, 273 (1994), we apply a two-step analysis to determine which version of a statute applies. We first examine whether Congress has pronounced an amended statute's proper reach. If it has not, then we apply the "judicial default rules" and examine whether the statute would have an improper retroactive effect, "*i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at 280. Congress explicitly stated that the 1996 amendment was applicable in tax years after August 20, 1996, to amounts received. Small Business Job Protection Act of 1996, Pub. L. 104-188, § 1605 (Aug. 20, 1996). Accordingly, we apply the amended version of 104(a)(2) to this action, although we note that the result would be the same under either version.

[7] In 1996, the Supreme Court was again called upon to examine the scope of 104(a)(2). This time, the issue before the Court was whether punitive damages received in a tort suit for personal injuries were excludable under § 104(a)(2). *O'Gilvie v. United States*, 519 U.S. 79, 81 (1996). In the course of its discussion, the Court noted that physically injured persons with judgments or settlements were in a better position from a tax perspective than they would have been in had they not been injured. The Court characterized this as an "anomaly." *Id.* at 87. Applying *Schleier* and *O'Gilvie*, other courts have recognized that lost wages are excluded from "gross income" under § 104(a)(2). *See Ervin v. Comm'r of Internal Revenue*, TC Memo 2002-134 (United States Tax Court 2002); *Collins v. Comm'r of Internal Revenue*, T.C. Memo 2002-115.

damages was based on ASG's negligence in allowing Fuala`au to escape. Moreover, the lost wages were clearly on account of physical injuries arising from her rape by Fuala`au. Accordingly, the lost past and future wages awarded to Gibbons are excludable from Gibbons' "gross income" under § 104(a) (2). The trial court's consideration of taxes in setting the award was therefore the only way to ensure that Gibbons was awarded only what she would have received in wages had she not been raped.

We recognize that many jurisdictions hold, at least in wrongful death actions, that the income tax consequences of an award should not be taken into account. *See, e.g., Johnson v. Manhattan & Bronx Surface Transit Operating Auth.,* 519 N.E.2d 326, 328-29 (N.Y. 1988); *Grand Trust Corn Exch. Bank v. Phila. Trans. Co.,* 190 A.2d 293, 298 (Pa. 1983). These courts reason that a determination of after-tax or net income is too speculative. *Johnson,* 519 N.E.2d at 328-29. Other courts hold that a deduction of taxes is too speculative for future earnings, but allowable for past lost wages because taxes can actually be determined for past lost wages. *See, e.g., Varlack v. SWC Caribbean, Inc.,* 550 F.2d 171, 178 (3d Cir. 1977) (applying Virgin Islands law). The reasoning in *Norfolk & Western Railway Company v. Liepelt* is particularly instructive on this point.

■ *Norfolk* held that a trial court in a wrongful death suit under the Federal Employers' Liability Act should have given a requested instruction informing the jury that a victim would not pay taxes on any damage award. *Norfolk,* 444 U.S. at 498. In so holding, the Court reasoned that determining a victim's after-tax earnings was not too speculative or complex for a jury. *Id.* at 494. Determining after-tax earnings was similar to figuring out future employment itself, future health, future personal expenditures, future interest rates, and future inflation. *Id.* All involved some measure of guesswork for which experts could provide guidance. *Id.* When an award for lost wages is not subject to post-judgment taxation, we hold, consistent with *Norfolk,* that a trial court may properly reduce an award for lost wages by such taxes as the court has a reasonable basis for finding the victim would have owed on those wages. Gibbons' award for lost wages was not subject to post-judgment taxation, and the trial court had before it sufficient evidence on which to base its determination of the taxes Gibbons would have had to pay on her earnings had she continued to be employed. Therefore, the trial court's reduction of Gibbons' lost wages to reflect taxes was proper.

## Conclusion

Because we find no error in the apportionment of damages or the reduction of Gibbons' lost wages by her estimated taxes, we AFFIRM.

It is so ordered.